IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lawrence C. Paulin, Jr., ) | |
| ) | Civil Action No. 6:07-3753-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Ray Nash, Sheriff, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on the defendant's and plaintiff's motions for summary judgment. The plaintiff, who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

      On April 29, 2008, the defendant filed a motion for summary judgment. By order filed April 30, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 1, 2008, the plaintiff filed a motion for summary judgment, which this court will also consider as his opposition to the defendant's motion.

The plaintiff was an inmate at the Dorchester County Detention Center ("DCDC") from July 9, 2007, through January 12, 2008.[1] The plaintiff alleges that the defendant violated his constitutional rights by serving food off of damaged and cracked food trays, which made him ill. The plaintiff alleges as follows in his complaint (verbatim):

> Plaintiff has been subject to eating out of damaged cracked food trays since being incarcerated on April 10, 2007 through November 10, 2007. The compartments in the food trays which are cracked/damaged, contain soap scum, deteoriated food particles, and a black in color, mildew or bacteria. It is a fact that the object, stated above, seep through the cracks of the hollow food tray, in to the food compartments on the tray, and marinate in the food. Plaintiff has experienced extreme discomfort, and has been taking medication for stomach pain. I have also been experiencing cramps, especially after eating dinner. I have been experiencing nauseua, headaches over the past two or three months. Over the past 10 years I've been relatively healthy, no type of stomach discomforts. I have been to the nurse 3 times in the past 2 weeks. The nurse gave me some kind of chocolately medication, and gave me tums. I went to the doctor on October 31, 2007; and he is in the process of prescribing me medication in reference to my illness. I have nothing further.

(Comp. 2-3).

According to the affidavit of Lieutenant Wanda Taylor, the detention supervisor for the DCDC, similar complaints were previously made by another inmate in a prior federal lawsuit and to the Department of Health and Environmental Control ("DHEC"). Because of that inmate's complaint, DHEC sent an inspector to the DCDC on August 3, 2007. After an inspection of food handling and serving at the DCDC, the inspector found

---

[1] In her affidavit submitted in support of summary judgment, Lieutenant Wanda Taylor, the detention supervisor for the DCDC, stated that the plaintiff was an inmate at the DCDC from July 9, 2007, to July 12, 2007, when he was released to the Charleston County Detention Center pursuant to a hold that had been placed on him (Taylor aff. ¶ 3). However, in an affidavit submitted in another action by the plaintiff before this court, *Paulin v. Smith*, 6:08-67-GRA-WMC, Lieutenant Taylor stated that the plaintiff was an inmate at the DCDC from July 9, 2007, to January 12, 2008. As the plaintiff submitted a grievance to the DCDC dated January 12, 2008 (Taylor aff. ¶3, ex. 1), in which he contends that he should be released from the GCDC to go to the Charleston County Detention Center, it appears that the July 12, 2007, release date in Lieutenant Taylor's affidavit is a typographical error. In his response to the motion for summary judgment, the plaintiff also states that he was confined at the DCDC from July 9, 2007, until January 12, 2008 (pl. m.s.j. 1).

the facility to be in compliance with DHEC standards. Additionally, on January 7, 2008, the South Carolina Department of Labor, Licensing & Regulation, Office of Occupational Safety and Health, conducted a similar inspection and found no violations (Taylor aff. ¶ 4).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the

3

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

As the plaintiff was serving a six-month Family Court sentence while an inmate in the DCDC (*see Paulin v. Smith*, 6:08-67-GRA-WMC, comp. 4), he was not a pretrial detainee, and thus his claim is governed by the Eighth Amendment. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

Even assuming the deprivation of a basic human need was sufficiently serious, the plaintiff has failed to show that the prison officials acted with a sufficiently

culpable state of mind. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). Further, as argued by the defendant, the plaintiff's injuries, if any, were at most *de minimis* and thus do not rise to the level of a constitutional claim. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (holding that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*.").

Next, the defendant argues that the evidence fails to reflect his personal involvement in the allegations of the plaintiff. Further, the defendant argues that the record does not show the elements necessary to establish a claim under a supervisory theory. This court agrees. The plaintiff has failed to allege that the defendant personally acted or failed to act in violation of his constitutional rights. Defendant Sheriff Nash testified that he did not have any personal contact with the plaintiff nor did he have knowledge of the alleged improper conditions the plaintiff alleges (Nash aff. ¶2). The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show that the subordinates were engaged

in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, there is no evidence that this defendant was indifferent to or authorized any such conduct.

The defendant also argues that, to the extent the plaintiff raises his claims against him in his individual capacity, he is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 22) be granted and the plaintiff's motion for summary judgment (doc. 35) be denied.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

December 24, 2008

Greenville, South Carolina